UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE SCHELLER,<br><br>            Plaintiff,<br><br>       v.<br><br>INTERSTATE REALTY MANAGEMENT, et al.,<br><br>            Defendants. | No. 2:14-cv-0457 MCE KJN PS<br><br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

INTRODUCTION

Presently pending before the court is defendants Interstate Realty Management Company (erroneously sued as Interstate Realty Management aka IRM and The Michaels Organization) ("IRM") and Kimberlee Schreiber ("Schreiber") (collectively, "defendants") motion to dismiss *pro se* plaintiff Melanie Scheller's ("plaintiff") first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 16.)[1]  The motion was initially noticed for hearing on June 5, 2014.  (Id.)

////

---

[1] This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C. § 636(b)(1).

However, on May 23, 2014, the parties filed a stipulation to continue the hearing until June 19, 2014, based on plaintiff's representation that she had found an attorney who might be willing to represent her. (ECF No. 26.) On May 27, 2014, the court approved the stipulation and rescheduled the hearing for June 19, 2014. (ECF No. 27.) The court's minute order further provided that:

> Plaintiff, proceeding with or without counsel, shall file any opposition to the motion no later than 6/5/2014, and defendants shall file any reply brief no later than 6/12/2014. Failure to file an opposition or statement of non-opposition to the pending motion by the required deadline may result in the imposition of sanctions, including monetary sanctions or potential dismissal of the action pursuant to Federal Rule of Civil Procedure 41(b). If plaintiff obtains counsel and such counsel enters an appearance, the court will be willing to consider a stipulation or request for a further, brief extension of time should such counsel need additional time to evaluate the case and/or a stipulation by the parties to amend the complaint.

(Id.)

Thereafter, on June 6, 2014, plaintiff filed an opposition to the motion to dismiss. (ECF No. 28.)[2] Plaintiff's opposition indicated that, even with the extension of time, plaintiff was unable to obtain counsel, and that she would continue to represent herself. Defendants timely filed their reply brief on June 12, 2014. (ECF No. 29.)

At the June 19, 2014 hearing, plaintiff appeared representing herself, and attorney Heath Havey appeared telephonically on behalf of defendants. After carefully considering the parties' written briefing, the parties' oral argument, the court's record, and the applicable law, the court recommends that defendants' motion to dismiss be granted, and that the action be dismissed with prejudice.

BACKGROUND

Plaintiff originally filed this action in the San Joaquin County Superior Court on November 14, 2013. After being served with the complaint and summons on January 13, 2014,

---

[2] Plaintiff's opposition was filed one day after the June 5, 2014 deadline. (ECF Nos. 27, 28.) In light of plaintiff's *pro se* status, the very short delay, and the court's desire to resolve the action on the merits, the court has considered plaintiff's opposition.

defendants removed the action to this court by filing a notice of removal on February 11, 2014, which invoked the court's diversity of citizenship subject matter jurisdiction. (See ECF No. 1.) On February 14, 2014, defendants also filed a motion to dismiss plaintiff's original complaint. (ECF No. 5.)

Thereafter, on February 27, 2014, plaintiff filed a motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (ECF No. 11.) On March 7, 2014, the court granted plaintiff's request to proceed in forma pauperis, and dismissed plaintiff's original complaint with leave to amend. (ECF No. 14.) At that time, the court noted:

> Plaintiff's complaint is approximately 123 pages long, does not contain numbered paragraphs, and consists of multiple California Judicial Council forms, interspersed with declarations, charts, lists, notes, and other evidentiary documents in a somewhat haphazard fashion. As such, it plainly fails to meet the requirements of Federal Rules of Civil Procedure 8 and 10.

(ECF No. 14 at 3.) In light of plaintiff's *pro se* status, the court provided plaintiff with some basic instruction regarding federal pleading requirements, including the requirement to plead sufficient facts in support of each claim to allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. (Id. at 2-4.) Plaintiff was granted 28 days to file a first amended complaint, and the court denied without prejudice as moot defendants' motion to dismiss the original complaint. (Id. at 6.)

Subsequently, on April 2, 2014, plaintiff filed the operative first amended complaint. (See First Amended Complaint, ECF No. 15 ["FAC"].) The background facts for purposes of the pending motion to dismiss are taken from the first amended complaint, unless otherwise noted.

According to plaintiff, on June 27, 2012, while working part-time at a non-profit agency, plaintiff responded to an employment advertisement by defendant IRM for a property manager position in Bakersfield, California, which was placed on the Las Vegas, Nevada section of Craigslist. During a subsequent July 3, 2012 phone interview with IRM's district manager, Mary Kashishian, Ms. Kashishian apparently "expressed a desire to offer the position, but wanted to meet face to face to make an official offer." Plaintiff alleges that she gave notice to her former employer and prepared to relocate at her own expense based on her belief that an employment

position in Bakersfield was secured.  However, during the subsequent in-person meeting with Ms. Kashishian and an individual named Naomi Pereja on July 11, 2012, it was "made clear that the position was not in Bakersfield California, but rather in Needles, California and that the position was for an onsite Property Manager in a Senior Complex."  Plaintiff claims that she had no choice but to accept the position in Needles, California, because she had already given notice to her prior job and made arrangements to relocate.  (FAC ¶ 9.)

Plaintiff apparently started her employment for IRM around July 22, 2012, and at that time, she was presented with, and acknowledged receipt of, an IRM employee handbook.  (FAC ¶ 4; ECF No. 1 at 28-71.)  Although plaintiff was offered a position as site manager for a senior complex in Needles known as "Mesa Grande," plaintiff was told that she would first stay at a neighboring family complex, known as "Lilly Hill," for a two-week training period to familiarize herself with IRM procedures and to allow the vacating manager at Mesa Grande, Janet Mask, to vacate the manager's unit.  (FAC ¶ 12.)  However, after the two-week training period ended, plaintiff was purportedly informed that defendant and IRM Vice President Kimberlee Schreiber had decided not to terminate Janet Mask, but instead to allow her to take a "forced retirement" in February 2013.  As such, plaintiff was required to continue residing at Lilly Hill and begin her position as site manager at Mesa Grande alongside the unwilling and disgruntled outgoing site manager, Janet Mask.  (Id. ¶ 13.)

According to the first amended complaint, plaintiff was then subjected to a hostile work environment, discrimination, retaliation, sexual harassment, and other acts of harassment until she left work on July 8, 2013.  Plaintiff's allegations in this regard are largely conclusory, but she recounts a few incidents of purportedly unwarranted or invalid criticism (remarks in an employee review that plaintiff needed to work on communication skills, reprimands based on a private phone conversation in plaintiff's apartment concerning child support payments, and reprimands concerning a friend who visited and stayed with plaintiff); blame for remarks by plaintiff that she allegedly never made (remarks that plaintiff was "tight" with her supervisor and could get another employee fired); being required to work over the 4th of July holiday when other employees did not have to; being assigned a different supervisor; having to send her children away to stay with

4

their father due to complaints about plaintiff's children coming into the office; being given work with unrealistic deadlines; and being shouted or sworn at. (FAC ¶ 26.) Plaintiff alleges that the outgoing manager, Janet Mask, on a daily basis made numerous remarks such as "this resident thinks you're a bitch" and "everybody hates you, no one wants you here," and purportedly incited the residents against plaintiff. (Id. ¶ 23.) Plaintiff further alleges that the maintenance supervisor, Mike Harding, made inappropriate comments such as "maybe I should start wearing high heels so you can't look down on me," or, when he walked behind plaintiff and noted a black heart tattooed on her lower backside, saying "Oh, that's where your heart is." (Id. ¶ 24.)

Plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH") sometime in November 2012, but then participated in a meeting with defendant Schreiber that same month to avoid litigation. The discussions at the meeting were memorialized in meeting notes; plaintiff made a few changes to the notes, and defendant Schreiber subsequently agreed to those changes. (FAC ¶ 1; ECF No. 1 at 21-24.) Discussions at the meeting apparently included a potential transfer within the company. (Id.) However, plaintiff contends that defendants subsequently breached several terms of the contract that was purportedly formed between plaintiff and defendants by virtue of the meeting notes. (FAC ¶¶ 2-3.)

In February 2013, plaintiff was transferred to a position in Jackson, California, and in connection with that transfer, plaintiff signed a relocation agreement, whereby plaintiff was required to repay to IRM a pro-rated portion of her relocation expenses if she voluntarily terminated her employment within a certain period of the transfer. (FAC ¶ 7; ECF No. 1 at 78-79.) Plaintiff claims that her misfortunes continued at the Jackson, California position. In addition to some of the above-mentioned alleged conduct, plaintiff alleges that she was never given a promised copy of a property audit inspection by her acting supervisor, Erin Gibson. (FAC ¶ 21.) Furthermore, despite plaintiff receiving threats from some of the residents at the Jackson property, Ms. Gibson allegedly refused to terminate their leases due to the property's many vacancies, placing plaintiff "in physical and psychological danger." (Id. ¶ 29.)

Plaintiff alleges that she consequently suffered an emotional and psychological breakdown, stopped working around July 8, 2013, and has filed for and received disability

insurance benefits and worker's compensation benefits.  (FAC ¶¶ 2, 5, 32; see also ECF No. 28 at 17-18.)  According to plaintiff's opposition to the motion to dismiss, plaintiff has not been terminated, but remains on unpaid medical leave since July 8, 2013.  (ECF No. 28 at 12.)[3]

The first amended complaint asserts three causes of action for breach of contract; three causes of action for fraud; and seven state law tort causes of action (labeled as good faith and fair dealing, deception, violation of public policy, violation of rights, harassment, negligence by breach of obligation, and serious and willful misconduct).  The first amended complaint seeks the following relief:  injunctive relief (an order that defendants become knowledgeable with, implement, and adhere to certain company policies dispelling harassment and bullying); actual damages of $57,337.00 for each breach of contract, for a total of $172,011.00; $66,560.00 in general damages for each count of fraud, for a total of $199,680.00; $250,000 in punitive damages for each tort cause of action, for a total of $1,750,000.00 (with half to be paid to a non-profit organization); interest on damages; and reimbursement of legal expenses.  (FAC ¶ 35.)

LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

---

[3] Plaintiff's opposition attached a May 22, 2014 letter from Brian Steiner, a licensed marriage and family therapist in Utah, indicating that plaintiff is ready to return to part-time to 3/4 time employment in a setting other than property management, among other conditions.  (ECF No. 28 at 22.)

In considering a motion to dismiss for failure to state a claim, the court accepts all of the well-pled facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a *pro se* pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when evaluating them under the standard announced in Iqbal). However, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). A denial of leave to amend is appropriate if granting further leave to amend would be futile. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). However, the court may consider "unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011); see also United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim…The defendant may offer such a document, and the district court may treat such a

document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).").

Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

DISCUSSION

Breach of Contract Claims

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008). "An essential element of any contract is the consent of the parties, or mutual assent. Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Donovan v. RRL Corp., 26 Cal. 4th 261, 270-71 (2001) (internal citations and quotation marks omitted). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." Weddington Productions, Inc. v. Flick, 60 Cal. App. 4th 793, 811 (1998).

Plaintiff's three breach of contract claims are based on plaintiff's contention that defendants breached the terms of three different documents: (a) the meeting notes concerning the November 2012 meeting between plaintiff and Schreiber, which plaintiff characterizes as a mediation agreement (FAC ¶¶ 1-3); (b) the IRM employee handbook (FAC ¶¶ 4-6); and (c) the February 2013 relocation agreement (FAC ¶¶ 7-8.)

As an initial matter, the court notes that, for purposes of resolving the motion to dismiss, it may consider the actual documents constituting the purported contracts, which were attached to

1  plaintiff's original complaint and became a part of the public record in this case, even though
2  those documents were not attached to the first amended complaint.  In this case, plaintiff's first
3  amended complaint refers to those documents; the documents, which constitute the purported
4  contracts upon which the breach of contract claims are based, are central to plaintiff's claims; and
5  although the parties disagree as to the legal significance of the documents, no party questions the
6  authenticity of the documents.  See Corinthian Colleges, 655 F.3d at 999; Ritchie, 342 F.3d at
7  908.  At the hearing, plaintiff again confirmed that she does not dispute the authenticity of the
8  documents.

9  Notably, in her opposition and at the hearing, plaintiff only objected to consideration of
10 the documents based on the following provision of the court's prior order dismissing the original
11 complaint with leave to amend:

> Plaintiff is informed that the court cannot refer to a prior complaint or filing in order to make plaintiff's first amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading or filing.  As a general rule, an amended complaint supersedes the original complaint, and once the amended complaint is filed, the original complaint no longer serves any function in the case.

16 (ECF No. 14 at 5.)  However, that portion of the court's order was designed merely to ensure that
17 plaintiff, as a *pro se* litigant, understood that the first amended complaint had to include all
18 factual allegations necessary to support plaintiff's claims, and could not rely on the original
19 complaint or other filings to complete the first amended complaint and state a cognizable claim.
20 Nothing in the court's order precludes the consideration of documents properly incorporated by
21 reference in the first amended complaint and forming the basis of plaintiff's claims under the
22 applicable law discussed above.  Furthermore, given that plaintiff initially included the
23 documents with her original complaint, she cannot claim to be unfairly surprised by their
24 consideration in this case.

25 After considering the documents upon which plaintiff's breach of contract claims are
26 based, the court concludes that these claims fail to state a claim upon which relief can be granted.
27 As for the first claim, the meeting notes concerning the November 2012 meeting between plaintiff
28 and Schreiber are nothing more than a memorialization of the discussions at that meeting.  Even

though it listed some proposals and action points to address plaintiff's concerns, the notes are simply not reasonably susceptible to interpretation as an enforceable contract. Notably, the acknowledgement that plaintiff signed with respect to the meeting notes also merely acknowledged that she agreed with the contents of the notes, reading: "By signature below, I do hereby acknowledge and affirm that I have received and reviewed the typewritten notes from the meeting held in Laughlin Nevada, on November 30, 2012, between me, Kimberlee Schreiber, and Aaron Richards, and am in agreement as to the contents as presented." (ECF No. 1 at 21-24.) Plaintiff's conclusory characterization of the meeting notes as a "mediation agreement" (FAC ¶ 1) does not transform the document into a contract.[4]

Plaintiff's second breach of contract claim, which is based on the IRM employee handbook, also lacks merit, because the handbook expressly and unambiguously provides, in bold print, that it does not confer contractual rights of any kind:

> This Handbook is a general guideline voluntarily adopted by the Company for informational purposes only. It is not intended to and does not create an express or implied contract of employment or any other contractual rights, obligations or liabilities.
>
> Because the Handbook is not a contract, it does not contain any promises by the Company and the Company is not legally or otherwise bound by it. More specifically, the Handbook should not be considered as or relied upon by employees as establishing terms and conditions of employment.

(ECF No. 1 at 29.) The handbook further states that "[t]he Company also reserves the right, in its sole discretion, to amend, modify, change, cancel, terminate or withdraw any or all of the policies, rules, benefits, sections and provisions of this Handbook at any time, unilaterally, with or without prior notice, in its sole discretion." (Id. at 30.) In light of this clear and explicit language, no reasonable person could have objectively interpreted the handbook as a contract.[5]

---

[4] Some of the alleged breaches of the "mediation agreement" relate to terms that do not even appear in the meeting notes. For example, plaintiff claims that the agreement was breached when housing with rental assistance within the same complex was not provided for plaintiff's son and his family (FAC ¶ 2), but no such topic even appears in the meeting notes.

[5] Of course, the fact that the employee handbook is not a contract does not mean that IRM can do whatever it wants with respect to employee matters. IRM, like any company, must comply with

10

1    Plaintiff's third breach of contract claim is based on the February 2013 relocation

2    agreement, which states, in part:

> I, Melanie Scheller, agree to transfer and remain at Jackson for at
> least a period of eighteen (18) months.  If I voluntarily terminate
> my employment within eighteen (18) months of my transfer I agree
> to repay to the Property/Company the monthly pro-rated share of
> the total expense related to the new assignment, subject to state and
> local law.

(ECF No. 1 at 78.)  Plaintiff alleges that this agreement created an 18-month employment term, and that defendants breached this contract by not having paid plaintiff for the full 18 months of salary.  (FAC ¶¶ 7-8.)  However, contrary to plaintiff's contention, the agreement on its face merely sets forth the terms for repayment of transfer/relocation costs if plaintiff voluntarily quits her job at the Jackson property within 18 months of the transfer.  Indeed, plaintiff's first amended complaint acknowledged that "failure to remain at that site or maintain employment with the company would result in the Plaintiff having to repay the expenses of the relocation."  (FAC ¶ 7.)  No reasonable person could construe the agreement as providing a contractual right to continued employment for an 18-month term.

Additionally, plaintiff's own subjective interpretation is further undermined by her designation as an at-will employee in the IRM employee handbook:

> Again, your employment by the Company is an employment-at-
> will.  This means you may terminate your employment at any time
> with or without notice or reason and the Company reserves the right
> to terminate your employment at any time with or without notice or
> reason and without compensation to you….No representative of the
> Company (other than the President, <u>in writing</u>) has the authority to
> enter into any agreement for employment for any specified period
> of time, to guarantee any particular position for any specified period
> of time or to make any promises with respect to compensation,
> promotional opportunities or any other term or condition of
> employment.

(ECF No. 1 at 30.)

Therefore, plaintiff's breach of contract claims are subject to dismissal.  Because these claims cannot be cured by the inclusion of additional facts or better pleading, they should be

---

applicable law.  However, it does mean that the handbook cannot serve as the basis for a breach of contract claim.

1  dismissed with prejudice.

2  Fraud Claims

3  "The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Altman v. PNC Mortg., 850 F. Supp. 2d 1057, 1068-69 (E.D. Cal. 2012) (citing Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996)).  When pleading a fraud-based claim, the claim must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  As the Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth...[W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient."...[W]e [have] required plaintiffs to set forth "specific descriptions of the representations made, and *the reasons for their falsity*."...To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.

In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297 (C.D. Cal. 1996); see also Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) (noting that fraud claims must be accompanied by the "who, what, when, where, and how" concerning the misconduct).

Plaintiff's first claim of fraud is premised on her allegation that IRM misleadingly represented the Needles, California job as being an employment position in Bakersfield, California.  However, in the first amended complaint, plaintiff admits that she was told that the

position would be in Needles before she accepted the job, and as such, she could not have suffered any resulting harm from the alleged misrepresentation.  (FAC ¶ 9.)[6]  Plaintiff's argument that she accepted the position under duress is unpersuasive, because the allegations of the first amended complaint effectively concede that any such alleged "duress" was created by plaintiff herself when she resigned her prior job before receiving an official offer of employment from IRM.  (See id. ["During the phone interview Mary Kashishian expressed a desire to offer the position, but wanted to meet face to face to make an official offer."].)

In support of the second fraud claim, plaintiff alleges, as noted above, that although she was offered a position as site manager for a senior complex in Needles known as "Mesa Grande," plaintiff was told that she would first stay at a neighboring family complex, known as "Lilly Hill," for a two-week training period to familiarize herself with IRM procedures and to allow the vacating manager at Mesa Grande, Janet Mask, to vacate the manager's unit.  (FAC ¶ 12.)  However, after the two-week training period ended, plaintiff was purportedly informed that Schreiber had decided not to terminate Janet Mask, but instead to allow her to take a "forced retirement" in February 2013.  As such, plaintiff was required to continue residing at Lilly Hill and begin her position as site manager at Mesa Grande alongside the allegedly unwilling and disgruntled outgoing site manager, Janet Mask.  (Id. ¶ 13.)

Plaintiff fails to articulate with the requisite particularity how these allegations plausibly amount to a fraud claim.  As an initial matter, there is no indication that IRM's alleged representations regarding plaintiff's position at Mesa Grande were false representations at the time they were made.  In fact, according to plaintiff's own allegations, Schreiber later simply changed her mind with respect to terminating Janet Mask, necessitating a realignment.  To be sure, broken promises of future conduct may under some circumstances be actionable when the promise is made without any intention of performing it.  Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 158 (1991).  But plaintiff's factual allegations here do not support such

---

[6] In that regard, one of plaintiff's changes to, or "comments" regarding, the meeting notes concerning the November 2012 meeting with Schreiber, attached to plaintiff's original complaint, states: "Location was never the issue as I agreed to take the position…."  (ECF No. 1 at 22.)

a contention – to the contrary, employers, in their exercise of managerial discretion, often make decisions to reassign or realign at-will employees after their initial placement in a position, and these operations decisions do not support some type of promissory fraud claim. Moreover, plaintiff entirely fails to plead, and cannot plausibly plead, facts in support of the elements of justifiable reliance and resulting damages. Plaintiff was permitted to start working at Mesa Grande and reside at a neighboring complex, and she fails to allege that her salary or benefits were somehow negatively impacted. Although plaintiff alleges that she was placed in a hostile work environment in having to work with Janet Mask, that allegation does not support a fraud claim against defendants.

Plaintiff's third fraud claim vaguely alleges that Schreiber falsely represented to plaintiff that IRM properties in California held different job descriptions and duties than those of IRM properties in other parts of the country, and that she would present plaintiff with the appropriate job description for her job. According to plaintiff, Schreiber ultimately failed to provide her with the job description. This fraud claim likewise fails, because, even assuming *arguendo* that Schreiber's statement was false, plaintiff does not and cannot plausibly allege that she justifiably relied on that statement in taking some type of action or failing to take some type of action, resulting in cognizable damages. Although she claims that Schreiber's false statements were "made in order to mislead and justify offenses that had been made against Plaintiff and lead to continued disorder and hostility in the work place" (FAC ¶ 15), that allegation is entirely conclusory.

For the reasons discussed above, the court finds plaintiff's fraud claims to be frivolous and implausible, and therefore concludes that granting further leave to amend as to such claims would be futile. As such, the court recommends that the fraud claims be dismissed with prejudice.

Tort Claims

Plaintiff's seven state law tort claims are vague and conclusory, and many of them do not contain any alleged facts whatsoever. Significantly, when plaintiff's conclusory and formulaic allegations are set aside, the tort claims do not allege any specific protected activity, protected class (other than potentially sex, as discussed below), or facts demonstrating public policy

14

violations. Instead, the first amended complaint largely sets forth griping and grievances regarding various employment conditions, e.g. having to work over a holiday period, criticism from supervisors, plaintiff not being allowed to have a friend stay with her, allegedly unrealistic work demands, a change of supervisors, being shouted and sworn at by co-workers, etc. As noted above, plaintiff alleges that she suffered an emotional and psychological breakdown, stopped working around July 8, 2013, and has filed for and received temporary disability insurance benefits and worker's compensation benefits. (FAC ¶¶ 2, 5, 32; see also ECF No. 28 at 17-18.)

Any emotional distress and psychological breakdown suffered by plaintiff as a result of the above-mentioned grievances in the workplace are subject to the exclusive remedy provision of California's worker's compensation law. See Cole v. Fair Oaks Fire Protection District, 43 Cal. 3d 148, 160 (1987) ("We have concluded that, when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability."); see also Miklosy v. Regents of University of California, 44 Cal. 4th 876, 902 (2008).

However, consistent with its obligation to liberally construe the pleadings of a *pro se* litigant, the court observes that plaintiff's first amended complaint at least broadly raised the prospect of a potential hostile workplace environment sexual harassment claim under California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12900 et seq. ("FEHA"). The California courts have recognized that a claim for emotional distress arising out of sexual harassment is not barred by worker's compensation exclusivity. See Accardi v. Superior Court, 17 Cal. App. 4th 341, 353 (1993) (disapproved on other grounds in Richards v. CH2M Hill, Inc., 26 Cal. 4th 798 (2001)). "A hostile work environment sexual harassment claim requires a plaintiff employee to show he or she was subjected to sexual advances, conduct, or comments that were (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive work environment." Taylor v. Nabors Drilling

15

USA, LP, 222 Cal. App. 4th 1228, 1236 (2014).  The employer is liable for sexual harassment by a nonsupervisory employee "only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action."  Id.

In this case, plaintiff alleged that an IRM maintenance supervisor and nonsupervisory employee as to plaintiff, Mike Harding, made inappropriate comments to plaintiff, such as "maybe I should start wearing high heels so you can't look down on me," or, when he walked behind plaintiff and noted a black heart tattooed on her lower backside, saying "Oh, that's where your heart is."  (FAC ¶ 24.)  These isolated remarks in themselves are plainly insufficient to state a hostile work environment sexual harassment claim, because they do not constitute conduct that is sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment.  Furthermore, the alleged comments appear to have been made more because of Mr. Harding's subjective views regarding plaintiff's personality as opposed to her sex.  Nevertheless, it was theoretically plausible that plaintiff could allege additional facts to state a proper hostile work environment sexual harassment claim against defendant IRM.[7]  At this early pleadings stage of the litigation, plaintiff would not have to prove her sexual harassment claim, but would merely have to allege facts from which the court could draw a reasonable inference that IRM is liable under that theory.  As such, the court questioned plaintiff at the hearing to determine whether further leave to amend should be granted.

At the hearing, plaintiff acknowledged that, apart from the above-mentioned statements, Mr. Harding's offenses against plaintiff consisted largely of general griping, smart remarks, and refusal to take directions from plaintiff.  Plaintiff initially suggested that she thought that this conduct was gender-based, but upon further questioning as to the factual basis for that contention, plaintiff stated that it was not the focus of her complaint, that she's "got nothing," and would just let the issue go.  Plaintiff also confirmed that she was not claiming that any of her bosses or

---

[7] A sexual harassment claim against Schreiber would not be cognizable, because plaintiff does not allege that Schreiber sexually harassed her, and "a non-harassing supervisor, who fails to take action to prevent sexual harassment, is not personally liable for sexual harassment under the [FEHA], as either an aider and abettor of the harasser or the employer, or as an agent of the employer."  Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1322 (1996).

16

1 supervisors at IRM sexually harassed her, or otherwise treated her differently based on her
2 gender.  Thus, in light of plaintiff's representations, the court concludes that granting further
3 leave to amend to assert a hostile workplace environment sexual harassment claim against IRM
4 would be futile.

5       The court recognizes plaintiff's assertions in the first amended complaint and at the
6 hearing that the former site manager, Janet Marks, allegedly yelled, swore, and made hateful
7 remarks towards plaintiff on a daily basis, causing plaintiff emotional distress.  But plaintiff also
8 conceded at oral argument that Ms. Marks's conduct was not based on plaintiff's sex or some
9 other protected class, but instead because Ms. Marks was purportedly disgruntled at being let go
10 and having to work with her successor.  Thus, while the court is sympathetic to plaintiff's alleged
11 mental and emotional condition, and does not wish to discount any emotional distress she may
12 have suffered, such alleged harm is subject to the exclusive remedy provision of California's
13 worker's compensation law, and plaintiff's allegations do not give rise to any actionable tort law
14 claim against defendants.

15 CONCLUSION

16       For the reasons discussed above, plaintiff's first amended complaint fails to state a claim
17 upon which relief can be granted.  Additionally, after carefully considering plaintiff's written
18 briefing, as well as her statements at oral argument, the court concludes that granting further leave
19 to amend would be futile.  Accordingly, IT IS HEREBY RECOMMENDED that:

20     1. Defendants' motion to dismiss plaintiff's first amended complaint (ECF No. 16) be
21        granted.
22     2. The action be dismissed with prejudice.
23     3. The Clerk of Court be directed to close this case.

24 In light of these recommendations, IT IS ALSO HEREBY ORDERED that:

25     1. All scheduled dates and deadlines in this action are vacated.
26     2. All pleading, motion practice, and discovery in this action are stayed pending
27        resolution of these findings and recommendations by the district judge.  <u>Other than
28        objections to the findings and recommendations, or non-frivolous motions seeking</u>

emergency relief, the court will not entertain further motions or amended pleadings until the findings and recommendations are resolved by the district judge.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated:  June 24, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE